IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| GAYLA JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-10-1314-F |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
|   Commissioner of Social Security | ) | |
|   Administration, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

On July 19, 2006, Plaintiff protectively filed her application for benefits. (TR 80-82).

1

Plaintiff was 44 years old when she alleged her disability began on June 18, 2005. (TR 80). Plaintiff alleged she was unable to work beginning June 18, 2005, due to a seizure disorder, a blockage in her carotid artery, a possible brain aneurysm, diabetes with neuropathy, depression, chronic obstructive pulmonary disease ("COPD"), emphysema, and migraine headaches. (TR 109). Plaintiff stated that as a result of her impairments she could not drive, she could not stand for long periods of time, she fell "all the time," she had "seizures sometimes . . . bad enough that [she was] in bed for weeks," she experienced "severe infections," she was in severe pain "most of [the] time," and she had dizziness. (TR 109). Plaintiff also described experiencing two to fourteen seizures per week and pain due to neuropathy that "keeps [her] in bed or [a] recliner most of [the] day . . . ." (TR 135, 146). Plaintiff's niece and sister provided lay descriptions of Plaintiff's seizures. (TR 154, 155).

Plaintiff's application was denied on initial and reconsideration reviews. (TR 39, 40, 51-53). At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Parrish ("ALJ") on August 11, 2008. (TR 20-38). At this hearing, Plaintiff testified she had a high school education and had not worked since August 2003. (TR 23). Plaintiff stated she could not work due to diabetes beginning in 1990 and diabetic neuropathy causing pain in her feet, lack of sensation when walking, hand cramping, stomach pain, and loss of grip strength. (TR 24-25). Plaintiff admitted she had been non-compliant with treatment prescribed for her diabetes. but she stated she was watching her diet "lately," losing weight, and trying to exercise. (TR 25-26). Plaintiff testified that she weighed 216 pounds and had previously weighed over 300 pounds a "couple years ago." (TR 26).

Plaintiff stated that her seizure disorder which began in 2003 had resulted in seizures despite medication that occurred "[s]ometimes . . . one or two a week and other times . . . five or six a day." (TR 28-29). Plaintiff testified she had at least four migraine headaches per month and with these headaches she vomited and had to go to bed for six or seven hours and sometimes for two days. (TR 26-27). She stated she was not taking any medication for migraine headaches and had not sought medical treatment for headaches for a year. (TR 27). Plaintiff also stated she was depressed because she was unable to work and she took anti-depressant medication. (TR 30). Plaintiff stated she did not drive, cooked some meals, performed some household chores, visited her parents and friends, and watched television. (TR 32). Plaintiff estimated she could stand for up to ten minutes at a time, walk one-half block, and stand a total of one hour in an eight-hour workday. (TR 33-34). Plaintiff stated that she had problems breathing due to COPD and that she used an inhaler twice per day. (TR 34). A vocational expert ("VE") testified that Plaintiff had previously worked as a resident health manager in a sedentary, skilled position and as a mental retardation aide in a medium, skilled position. (TR 35). The VE further testified concerning the availability of jobs for certain hypothetical individuals. (TR 36-37).

Following the hearing, the ALJ issued a decision on October 29, 2008, in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 10-19). The Appeals Council declined to review this decision. (TR1-3). Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. Standard of Review

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i). Judicial review of a decision by the Commissioner in a social security case is limited to a determination of whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). In reviewing the decision of the Commissioner, the court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). The "determination of whether the ALJ's ruling [which becomes the Commissioner's decision] is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009)(citations, internal quotation marks, and brackets omitted).

III. ALJ's Decision

Following the requisite sequential procedure for determining disability, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since June 18, 2005, her alleged disability onset date. (TR 12). At step two, the ALJ found that Plaintiff had severe impairments due to poorly-controlled diabetes, poorly-controlled seizure disorder, and

affective mood disorders. (TR 12). The ALJ specifically found that Plaintiff's alleged impairments due to carotid artery obstruction, possible brain aneurism, COPD, emphysema, and vascular headaches were not severe because these impairments did not cause more than minimal impact upon Plaintiff's ability to perform basic work activities. (TR 12). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that satisfied or medically equaled one of the agency's regulatory listings for impairments deemed disabling *per se.* (TR 12-13).

At the fourth step, the ALJ summarized the medical and non-medical evidence and found that despite Plaintiff's impairments she had the residual functional capacity ("RFC") to perform work at the light exertional level limited by concentration problems to unskilled work. (TR 13-18). The ALJ found that this RFC for work precluded the performance of Plaintiff's previous jobs. (TR 18). Having reached the fifth and final step of the requisite sequential analysis, the ALJ relied on the VE's testimony concerning the availability of jobs for an individual with Plaintiff's vocational characteristics and RFC for work. (TR 18-19). The ALJ found that despite her impairments Plaintiff was capable of performing jobs available in the economy, including the jobs of sewing machine operator, office helper, and addresser, and consequently she was not disabled within the meaning of the Social Security Act. (TR 19).

IV. Obesity

Plaintiff contends that the ALJ erred in failing to recognize and consider the impact of Plaintiff's obesity upon her ability to work. At step two, the ALJ must determine

5

"whether the claimant has a medically severe impairment or combination of impairments." Bowen v. Yuckert, 482 U.S. 137, 140-141(1987). This determination is governed by the agency's "severity regulation" at 20 C.F.R. § 404.1520(c). Pursuant to this regulation, the claimant must make a "threshold showing that his [or her] medically determinable impairment or combination of impairments significantly limits his [or her] ability to do basic work activities." Williams v. Bowen, 844 F.2d 748, 750-751 (10th Cir. 1988). Although the claimant must make only a "de minimis" showing that the medical condition is medically severe, "the claimant must show more than the mere presence of a condition or ailment." Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).

At step four, the ALJ is required to determine whether the claimant retains the RFC to perform the requirements of previous work. At this step, the ALJ must "make findings regarding 1) the individual's [RFC], 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation, given his or her [RFC]." Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993).

Social Security Ruling ("SSR") 02-1p requires an ALJ to consider the effects of obesity when assessing a claimant's RFC and advises that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02-1p, "Titles II & XVI: Evaluation of Obesity," 2000 WL 628049, *1 (Sept. 12, 2002). An ALJ may "not make assumptions about the severity of functional effects of obesity combined with other impairments," but must "evaluate each case based on

the information in the case record." Id. at *6.

At her hearing, Plaintiff testified she weighed 216 pounds and that her weight was down from a previous high of over 300 pounds. (TR 25-26). The ALJ recognized this testimony. (TR 14). The ALJ also summarized Plaintiff's statements in the record concerning her usual daily activities. (TR 17). The ALJ further recognized that no physician had placed any restrictions or limitations upon Plaintiff's ability to work and that Plaintiff had been non-compliant with prescribed treatment and medications. (TR 17). These findings are well supported by the medical record, which includes pervasive notations by treating and examining physicians that Plaintiff was non-compliant with medications and treatment prescribed for her diabetes and seizure impairments.

The medical record demonstrates that Plaintiff's functional abilities were not limited by obesity or by obesity in combination with Plaintiff's severe impairments. Plaintiff's treating family physician, Dr. Kirkendall, referred her to a neurologist, Dr. Knapik, for evaluation of her vascular headaches, asymptomatic right carotid artery stenosis, diabetic peripheral neuropathy, and "seizures." (TR 194). Dr. Knapik noted in March 2004 that he had examined Plaintiff and that her fine and gross motor skills were intact and her gait and station were normal. (TR 194). Dr. Knapid noted that there was uncertainty as to whether Plaintiff had a seizure disorder, "pseudoseizures," or vascular headaches. (TR 194). Dr. Knapik also noted Plaintiff admitted non-compliance with her anti-seizure medication and that her lab work revealed "subtherapeutic" levels of her prescribed anti-seizure medication. (TR 194). He recommended further testing to clarify whether Plaintiff was experiencing

7

"true seizures" or not.

In August 2004, Dr. Gumerlock, a neurosurgeon, examined Plaintiff and noted that Plaintiff's gait was stable and that she could heel and toe and tandem walk without difficulty, although she exhibited decreased sensation indicating peripheral neuropathy. (TR 190). Because Plaintiff's diabetes was poorly controlled, she continued to abuse tobacco, and she was not taking anti-seizure medication as prescribed, Dr. Gumerlock noted that she would not treat Plaintiff for her carotid artery stenosis until these conditions were controlled. (TR 190).

Plaintiff's treating family physician, Dr. Kirkendall, noted in June 2005 that Plaintiff exhibited normal gait and a normal neurological examination. (TR 402). Dr. Kirkendall noted in September 2006 that Plaintiff's physical examination was normal. (TR 227-228). Another treating family physician, Dr. Suthers, noted in March 2006 that Plaintiff's diabetes was poorly controlled because Plaintiff did not check her blood sugar levels or follow the prescribed diet. (TR 386). He noted she was "obese" but did not note any functional limitations. (TR 386). In November 2006, Plaintiff reported to a treating family physician, Dr. Bentley, that she had no leg pain when she took her prescribed medication for neuropathy. (TR 456).

Plaintiff underwent a second neurosurgical evaluation conducted by Dr. Gumerlock in May 2006. During this examination, Dr. Gumerlock noted that Plaintiff complained of headaches and some dizziness episodes. (TR 396). Plaintiff exhibited normal motor and sensory testing except for decreased vibratory sensation and stocking hypesthesia (sensory

8

loss) in her lower extremities. (TR 397). She was able to heel, toe, and tandem walk "well." (TR 397). Dr. Gumerlock again advised Plaintiff that she would need to stop smoking and control her blood sugar levels in order to become medically compliant before further evaluation for treatment of her right internal carotid artery stenosis in her neck. (TR 398).

In May 2007, Dr. Bentley, a family physician, noted that Plaintiff was complaining of abdominal pain but that "numerous workups" had not shown any cause for her pain. (TR 450). Plaintiff also complained of swelling and pain in her feet, and Plaintiff was prescribed medication for this symtom. Dr. Bentley noted that Plaintiff had "mild COPD and obesity with diabetes out of control . . . ." (TR 450). No functional limitations were noted. In June 2007, Dr. Bentley noted Plaintiff returned for follow-up treatment and that she complained of hurting "all over" and bad headaches. (TR 492). According to Dr. Bentley, Plaintiff did not take care of herself. (TR 492). In October 2007, Dr. Bentley noted that Plaintiff exhibited equal strength and sensation in her upper and lower extremities, full strength, good gait, good heel and toe walking, normal reflexes, and good cerebellar function. (TR 490).

In a physical examination conducted by Dr. Knapik in December 2007, Dr. Knapik noted that Plaintiff exhibited abnormal sensation in her hands, feet, and abdomen, but no motor weakness and normal gait. (TR 499-500). He noted Plaintiff's diabetes was poorly controlled and she needed to gain control of this condition or she would develop progressive amyotrophy (wasting of muscle tissues). (TR 499-500). Dr. Knapik noted in July 2008 that Plaintiff's foot pain was due in large part to the presence of numerous plantar warts on the bottom of her feet for which she needed treatment by a podiatrist. (TR 503).

9

Plaintiff sought treatment from a new family physician, Dr. Shearer, in May 2008, and Dr. Shearer noted that a physical examination of Plaintiff was normal except for diminished sensation in her feet. (TR 495-496). Plaintiff admitted to Dr. Shearer in June 2008 that she was not checking her blood sugar levels and was not compliant with her diabetes and anti-seizure medications. (TR 494). In July 2008, Dr. Shearer noted that Plaintiff complained of foot pain, and the physician noted Plaintiff's foot pain was largely caused by numerous plantar warts on her feet and that a neurologic examination was normal. (TR 493). The physician noted Plaintiff's diabetes had improved with medication. (TR 493).

Dr. Knapik noted in August 2008 that Plaintiff "had significant physician recommendation and medication noncompliance" and she had "really not taken care of herself whatsoever." (TR 501). He stated Plaintiff continued to smoke "although she has been educated about nicotine cessation at multiple times in the past." (TR 501). Dr. Knapik noted he was not certain Plaintiff had an epileptic disorder and that she denied seizures. He noted that on examination Plaintiff walked independently and safely without assistance and she could heel/toe stand although she exhibited profound sensory neuropathy involving predominantly her lower extremities and a "mild" balance disturbance on tandem walking. (TR 501-502).

As the record shows, Plaintiff did not allege obesity as a disabling or functionally limiting impairment, and the ALJ did not find obesity was a severe impairment at step two of the sequential analysis. Although obesity was identified as a diagnosis, none of Plaintiff's treating or consultative examining physicians identified limitations in her ability to work

caused by obesity. In the absence of any evidence that Plaintiff's obesity had "more than a minimal effect on [Plaintiff's] ability to do basic work activities," SSR 02-1p, Titles II and XVI: Evaluation of Obesity, 2000 WL 628049, at *4, the ALJ did not err in implicitly determining that Plaintiff's obesity did not constitute a severe impairment.

## V. Credibility

The ALJ found that Plaintiff's testimony was not fully credible. The ALJ explained in his decision that this credibility determination was based on evidence in the medical and non-medical record, including the notations by treating and examining physicians showing Plaintiff was "noncompliant with treatment and medications" prescribed for her diabetes and seizure disorder, that she had "some slight depression that has only recently been treated with Cymbalta," that she had "migraines but she has not received clinical treatment for over one year," that she had COPD "but still continues to smoke ½ pack of cigarettes per day despite several doctors telling her to cease smoking," and that she "described daily activities that are not limited to the extent one would expect given the complaints of symptoms and limitations. The claimant cares for her own personal needs, reads, works crossword puzzles, watches television, does chores resting between such as vacuuming, sweeping floors, and some laundry, microwaves meals, or cooks easy meals, shops for groceries and household necessities with an electric cart twice a month, visits on a good day, [and] attends church and picnics with others as she does not drive." (TR 17).

When the medical record shows that a claimant has an impairment that could reasonably be expected to produce the claimant's symptoms, such as pain, the ALJ must

evaluate the intensity and persistence of those symptoms and determine whether the symptoms limit the claimant's ability to work. 20 C.F.R. § 404.1529(c)(1). To do this, the ALJ must "make a finding about the credibility of the [claimant's] statements about [her] symptom(s) and [their] functional effects." SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Factors the ALJ may consider in evaluating the claimant's symptoms include "the levels of [her] medication and [its] effectiveness, extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of [her] medical contacts, the nature of [her] daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). See also 20 C.F.R. § 404.1529(c)(3)(listing factors relevant to symptoms that may be considered by ALJ). "Credibility determinations are peculiarly the province of the finder of fact," and credibility determinations will not be upset "when supported by substantial evidence. Nevertheless, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002)(quotations and alteration omitted). The ALJ's credibility findings are well supported by the record, and the ALJ appropriately considered medical and non-medical evidence that was inconsistent with Plaintiff's claim of disability. Plaintiff's "failure to follow prescribed treatment is a legitimate consideration in evaluating the validity of an alleged impairment." Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996). Therefore, the credibility determination should not be disturbed.

VI. Step Three

Plaintiff contends that there is not substantial evidence to support the ALJ's step three determination. Specifically, Plaintiff contends that her diabetes impairment meets or equals the listed impairment for diabetes mellitus at 20 C.F.R. pt. 404, subpt. P, app. 1, § 9.08(A). At the third step of the evaluation procedure, the ALJ "determines whether the impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity" based on medical evidence in the record. Bowen, 482 U.S. at 141. "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." Id.

The ALJ considered whether Plaintiff's diabetes satisfied the listings for endocrine disorders and found that the impairment did not "approach the severity contemplated by the listings. On February 13, 2007 the claimant's blood sugars were reported as being completely under control with HGA1C 11.8." (TR 12). The listing for diabetes mellitus requires medical evidence of

> A. Neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C); or
> B. Acidosis occurring at least on the average of once every 2 months documented by appropriate blood chemical tests (pH or PCO, or bicarbonate levels); or
> C. Retinitis proliferans; evaluate the visual impairment under the criteria in 2.02, 2.03, or 2.04.

20 C.F.R. pt. 404, subpt. P, app. 1, § 9.08. Although Plaintiff contends that her diabetic impairment met the requirements of subdivision A of this listing, Plaintiff points to no

13

medical evidence in the record showing she exhibited "significant and persistent disorganization of motor function in two extremities" causing "sustained disturbance of gross and dexterous movements, or gait and station," as required by this listing. The medical record is not consistent with this allegation, as Plaintiff's treating and consultative examining physicians persistently found Plaintiff exhibited decreased sensation and/or reflexes in her lower extremities but that Plaintiff's motor functions, including fine and gross motor skills, gait and station, and heel/toe walking, were not disturbed by her diabetic peripheral neuropathy. (See TR 190 (Dr. Gumerlock), 194 (Dr. Knapik), 197 (Dr. Loftus), 199 (Dr. Knapik), 202 (Dr. Knapik), 206 (Dr. Knapik), 397 (Dr. Gumerlock) 402 (Dr. Kirkendall), 490 (Dr. Berends), 494 (Dr. Knapik), 500 (Dr. Knapik)). Only one treating physician, Dr. Knapik, noted in August 2008 that Plaintiff exhibited a "mild . . . balance disturbance . . . with tandem walking," but Dr. Knapik also noted that Plaintiff walked independently and safely without assistance and that she could heel/toe stand. (TR 501-502). There is substantial evidence in the record to support the ALJ's finding that Plaintiff's diabetic neuropathy did not meet or equal the listed impairment.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____October 18th_____, 2011,

in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this  28th  day of  September , 2011.

*/s/ Gary M. Purcell*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE